UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 18-cv-00182

———————————

CRISTHIAN VEGA,

Plaintiff,

v.

K & C INTERIOR CONSTRUCTION CORP.,
KEVIN DOE, AND JOHN DOES NO. 1–10,

Defendants.

———————————

**REPORT & RECOMMENDATION**
———————————

**August 28, 2018**

**To the Honorable Allyne R. Ross,
Senior United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Cristhian Vega ("Plaintiff" or "Vega"), commenced this action against K & C Interior Construction Corp. ("K & C"), Kevin Doe ("Kevin Doe"), and John Does Nos. 1–10 ("John Doe Defendants") on January 11, 2018, seeking damages pursuant to the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and a state common law claim. (Dkt. No. 1 ("Compl.") ¶¶ 1–3; 29 U.S.C. §§ 201 *et seq.*; N.Y. Lab. Law §§ 190, 650 *et seq*).

Despite proper service, K & C never answered or otherwise responded to the Complaint. On February 23, 2018, Vega requested a certificate of default, and on February 26, 2018, the

1

Clerk of the Court entered default against K & C. (*See* Dkt. Nos. 7, 8). Vega now seeks a default judgment against K & C.[1] (*See* Dkt. No. 9).

Your Honor has referred Vega's motion for default judgment to me for a Report and Recommendation. (*See* Order, 03/14/2018). For the reasons stated herein, I respectfully recommend granting Vega's motion for default judgment against K & C for $30,968.50, including attorney's fees and costs, plus post-judgment interest.

## BACKGROUND[2]

### I. Factual Background

Vega worked as a carpenter for K & C, a New York interior construction company, from April 2016 to September 2016, and again from August 2017 to November 2017. (Compl. ¶¶ 6, 32–35). Vega alleges that K & C is "engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA," "has used goods and materials produced in interstate commerce," "has employed at least two individuals who handled such goods and materials," and "has had gross annual revenues in excess of $500,000." (Compl. ¶¶ 7–9). Vega states that one of K&C's owners, Kevin Doe, whose last name is unknown to Vega hired him and set his wages and schedule. (Compl. ¶ 13).

Vega claims he usually worked eight-hour days, six days a week from Monday to Saturday for a total of forty-eight hours each week. (Compl. ¶¶ 38–39). Vega was paid $160.00 per day and received a business check biweekly for $800.00, and an additional $160.00 in cash for the sixth day he worked each week. (Compl. ¶¶ 40–42, 45). Vega alleges this was "to

---

[1] Vega abandoned his claims against Kevin Doe and the other John Doe Defendants in his motion for default judgment (*see* Dkt. Nos. 9–10), but has not filed a voluntary notice of pursuant to Fed. R. Civ. P. Rule 41(a)(1)(A).

[2] The following facts are accepted as true. *See e.g., Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC,* 779 F.3d 182, 188 (2d Cir. 2015) (noting that a court is required to accept the allegations in a complaint as true in deciding whether default judgment is appropriate).

disguise the fact that he was working overtime." (Compl. ¶ 45). Vega claims that the business checks did not contain information on his rate of pay, and that Defendants never produced paystubs, wage statements, or written notices of his rate of pay. (Compl. ¶¶ 45, 53–54). Vega further claims Defendants never paid overtime wages for the hours he worked beyond the first forty hours each week. (Compl. ¶ 43). Kevin Doe told Vega he does not pay overtime wages. (Compl. ¶ 47).

Around October 2017, Vega claims that although Kevin Doe promised to increase his daily wages from $160.00 to $180.00, Defendants never paid him the additional $20.00 for each hour he worked. (Compl. ¶ 48). After inquiring about the promised raise, Vega alleges that Defendants stopped payment on his last two paychecks in retaliation. (Compl. ¶¶ 49–50). Vega claims he quit working for Defendants as a result, and Defendants never paid his wages for the last four weeks of his employment. (Compl. ¶¶ 51–52).

According to Vega, he unsuccessfully attempted to collect his personal work tools from Defendants after he quit. (Compl. ¶ 52). Vega claims the tools are worth $1,500.00. (Compl. ¶ 52).

## DISCUSSION

### I. Legal Standard

Under Rule 55 of the Federal Rules of Civil Procedure, when a defendant fails to file a timely response to a complaint, the plaintiff must follow "a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must request entry of default by the Clerk of the Court. Fed. R. Civ. P. 55(a). Once default has been entered against the non-responsive party, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Here, K&C was properly served but failed to

3

answer or otherwise respond to the Complaint. (*See* Dkt. No. 6; *see also* Order, dated 2/23/2018). Plaintiff satisfied the requirements under Fed. R. Civ. P. 55 by requesting entry of default (Dkt. No. 7), which the Clerk of the Court granted (Dkt. No. 8) and moving for a default judgment. (Dkt. No. 9).

## II. Liability

### A. Defendant Violated the FLSA

In order to plead properly a cause of action under the FLSA, the plaintiff must allege that: (1) defendant is an employer subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Saucedo v. On the Spot Audio Corp.*, No. 16-cv-00451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *adopted by*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see also* 29 U.S.C. §§ 203, 213.

#### 1. K&C is an Employer

The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). A defendant is an employer under FLSA if the defendant meets the criteria for the enterprise coverage test or individual coverage test. *See Saucedo*, 2016 WL 8376837, at *4. The enterprise coverage test considers whether the employer is engaged in commerce, and earns $500,000 or more in their "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). The individual coverage test takes into account the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Saucedo*, 2016 WL 8376837, at *4.

Vega alleges that, during the relevant period, K & C "engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA," "used goods and materials produced in interstate commerce," "has employed at least two individuals who handled such goods and materials," and "had gross annual revenues in excess of $500,000." (Compl. ¶¶ 7–9). Allegations detailing statutory definitions without providing additional facts are generally not sufficient to infer a nexus to interstate commerce. In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (it was "logical to infer . . . that the cleaning supplies utilized by the Plaintiffs originated outside of New York."); *Fermin*, 93 F. Supp. 3d at 33 (it was "reasonable to infer that [a restaurant] requires a wide variety of materials to operate . . . [and] some of these materials moved or were produced in interstate commerce.").

Considering the nature of K & C's business as an interior construction company, it is reasonable to infer that K & C engaged in interstate commerce by handling and otherwise working on construction materials moved from or produced in other states. Vega's allegations are therefore sufficient to establish that K & C is an employer within the meaning of the FLSA.

2. Plaintiff is an Employee

The FLSA broadly defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Vega alleges that K & C employed him as a "carpenter." (Compl. ¶ 35). Accordingly, I find that Vega falls within the FLSA's definition of "employee."

5

Finally, Vega must show that he is not exempt from the FLSA's protections, which requires more than a recitation of the statutory elements in the complaint. *Fermin*, 93 F. Supp. 3d at 32 (citations omitted). The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and citations omitted), but they do not include functions such as "carpenter." (Compl. ¶¶ 13, 32). *See also* 29 U.S.C. § 213. Accordingly, I find that Vega is an employee under the FLSA.

## B. Defendants Violated the NYLL

NYLL is the state analogue to the FLSA, and mirrors the FLSA's minimum wages and overtime compensation provisions. *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011). However, the NYLL does not require a Plaintiff to demonstrate the employer's minimum amount of gross sales or engagement with interstate commerce. *Id.*; *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Under the NYLL, employees are entitled to recover all unpaid wages, including overtime, calculated in the same manner as under the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; N.Y. Lab. Law § 198.

Similar to the FLSA, the NYLL applies to "employers" and "employees." "Employers" includes "any individual, partnership, association, corporation, limited liability company . . . or any organized group of persons acting as employer[,]" while an "employee" is defined as "any individual employed or permitted to work by an employer in any occupation." *Id.* §§ 651(5)–(6); *Tacuri v. Nithin Constr. Co.*, No. 14-cv-2908 (CBA) (RER), 2015 WL 790060, at *3 (E.D.N.Y. Feb. 24, 2015). Plaintiff has sufficiently alleged that at all relevant times, Defendant was an employer and Plaintiff was an employee within the meaning of the NYLL.

## C. Statute of Limitations

The statute of limitations for NYLL claims is six years. *See* N.Y. Lab. Law §§ 198(3), 663(3). Under the FLSA, the statute of limitations is only two years, "except that a cause of

6

action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). A defendant's default itself establishes willfulness. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-cv-1695 (ARR) (MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015). Further, the statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-cv-3314 (SJ) (RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015) (internal citations omitted), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

 Here, Vega filed his Complaint on January 11, 2018, in which he was specifically named. (*See* Compl.). K & C subsequently defaulted. (Dkt. No. 8). Vega may consequently recover from K & C for FLSA violations that occurred on or after January 11, 2015, and for NYLL violations that occurred on or after January 11, 2012. All of Vega's claims fall within the FLSA and the NYLL statute of limitations.

### D. **Defendant Violated the Wage Theft Protection Act**

 Section 195 of the New York Wage Theft Protection Act ("WTPA") became effective on April 9, 2011, and was further amended on February 27, 2015. *See Guaman v. Krill Contracting, Inc.*, No. 14-cv-4242 (FB) (RER), 2015 WL 3620364, at **8–9 (E.D.N.Y. June 9, 2015). The WTPA mandates that upon hiring of a new employee, all employers must provide the new employee a notice containing information on, *inter alia*, the rate of pay, whether payment is by the hour, shift, day, week, salary, or some other method, and the employer's contact information. N.Y. Lab. Law § 195(1). Along with the presentation of this notice, the employer shall also obtain a signed and dated written acknowledgement of receipt from the employee, presented in the employee's primary language. *Id.*

The WTPA also requires employers to "furnish each employee with a statement with every payment of wages" that includes: 1) the dates of work covered by that payment of wages; 2) name of employee; 3) name and contact information of employer; 4) rates of wage, including any deductions or allowances. *Id.* § 195(3). Further, where overtime pay is warranted, the statement shall include: 1) the regular hourly rate or rates of pay; 2) the overtime rate or rates of pay; 3) the number of regular hours worked; and 4) the number of overtime hours worked. *Id.*

Defendant hired Plaintiff after the enactment of Section 195, and Plaintiff is therefore protected under its provisions. Defendant did not provide Plaintiff with a pay notice in accordance with Section 195(1) Plaintiff was hired. (Compl. ¶¶ 53-54, 57-58). Furthermore, Plaintiff was paid partly in cash without a corresponding wage statement. (Compl. ¶¶ 46, 53-54). Therefore, I find that the Defendant has violated the WTPA requirements to provide wage notices and wage statements.

### E. State Common Law Conversion Claim

In New York, "conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (N.Y. 2006); *see also State of New York v. Seventh Regiment Fund*, 98 N.Y.2d 249, 259 (N.Y. 2002). Two elements of conversion are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito*, 8 N.Y.3d at 50 (internal citation omitted).

Vega claims he owned work tools that he left at one of K & C's job sites. (Compl. ¶ 52). Vega further claims Kevin Doe "would not let [him go] back to the site to get [his] tools" and

that they "still have them." (*See* Compl. ¶ 52). Accordingly, I find that Vega has sufficiently alleged a state law conversion claim and may recover from K & C for his personal work tools.

## III. Damages

### A. Scope and Standards of Recovery

Where a plaintiff establishes a violation of FLSA Section 207, a defendant is liable to the plaintiff for: (1) "the amount of their unpaid minimum wage" or (2) "the amount of unpaid overtime compensation," and (3) "an additional equal amount as liquidated damages." 29 U.S.C. § 216 (b). Under NYLL, a plaintiff who successfully establishes a "wage claim" should "recover the full amount of any underpayment, all reasonable attorney's fees, [and] prejudgment interest," as well as liquidated damages equal to the wages owed to the employee if the violation was not in good faith. N.Y. Lab. Law § 198(1)(a).

Before a court can award damages on default, it must determine "the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Though the court need not accept the plaintiff's damages allegations as true, a defaulting defendant effectively admits that its conduct proximately cause the plaintiff's damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F. 2d 155, 159 (2d Cir. 1992) (*citing Trans World Airlines, Inc., v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971)).

Federal and state laws both require employers to maintain records of employee wages and hours. 29 U.S.C. § 211; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6. In the situation of a defaulting employer that cannot produce the necessary employee records, a plaintiff may "establish his damages based on his recollection of his hours worked and wages paid," and the court may give plaintiff "all the reasonable inferences invited by the evidence." *Espinoza v.*

*Industrial Glass & Mirror Inc.*, No. 16-cv-0064 (ARR) (RER), 2016 WL 7650592, at *4, (E.D.N.Y. Nov. 30, 2016), *adopted by*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017).

### B. Damages Calculation

Vega seeks damages against K & C for unpaid regular and overtime wages, liquidated damages, failure to provide him rate of pay documentation, attorneys' fees and expenses, and his personal work tools. (*See* Dkt. Nos. 9–10).[3]

1. Unpaid Overtime Wages

The FLSA requires that employees receive one and one-half times the regular rate for each hour worked over forty hours in any given workweek. 29 U.S.C. § 207(a)(1). New York law incorporates and restates the FLSA requirements, such that the analysis of overtime claims under state law is generally the same as under the federal law. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate"). To determine the amount of overtime owed, the Court must first calculate Vega's regular wage rate. When an "employee is paid a flat sum for a day's work . . . his regular rate is determined by totaling all the sums received at such day rates . . . . in the workweek and dividing the total by hours actually worked." 29 C.F.R. § 778.112; *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011).

Vega worked eight hours and received $160.00 per day, regardless of the amount of hours he worked. (Compl. ¶¶ 39, 40–42; Dkt. No. 10 at 2). Thus, Vega's regular rate was $20.00 per hour ($160.00 / 8) and his overtime rate was $30.00 per hour ($20.00 x 1.5). 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Vega consistently worked six days per week and eight hours per day, totaling a minimum of forty-eight hours per week. (Compl. ¶¶

---

[3] Vega also sought pre-judgment interest in his Complaint that he now abandons in his motion for default judgment. (*See* Compl. at 21; Dkt. Nos. 9–10).

10

38–39; Dkt. No. 10 at 2). Although the Court may reduce overall recovery when a complaint does not allege time worked with specificity, because Vega worked these hours consistently, the Court need not reduce his number of overtime hours. Vega is entitled to $10 per hour for every hour worked over forty in the workweek. Vega consistently worked 8 overtime hours each week, and is therefore entitled to $80 per week ($10/hour x 8 hours) in overtime compensation. Vega worked for a total of forty-four weeks. (Compl. ¶¶ 34, 39). Accordingly, I respectfully recommend that Vega receive $3,520.00 ($80.00 x 44 weeks) in overtime compensation.

2. Unpaid Wages

Under the NYLL, workers "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a). When Vega ended his employment, K & C still owed him four weeks of unpaid wages. (Compl. ¶ 51). Vega was paid $160.00 per day and worked 6 days per week, therefore he is entitled to $960.00 ($160.00 x 6) per week in unpaid regular wages. (Compl. ¶¶ 38, 41). Accordingly, I respectfully recommend awarding $3,840.00 ($960.00 x 4 weeks) in unpaid wages.[4] (Vega Decl. ¶¶ 19–20).

A. **Liquidated Damages Under the FLSA and the NYLL**

Vega requests liquidated damages for his regular and overtime wage claims. (*See* Compl. ¶¶ 65, 70). Both the FLSA and the NYLL allow recovery for liquidated damages in an amount equal to the amount of unpaid overtime wages. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). The NYLL also allows recovery for liquidated damages in an amount equal to the amount of unpaid regular wages. (N.Y. Lab. Law § 198(1-a)). Double liquidated damages recovery under the NYLL and FLSA is not permitted. *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Espinoza,* 2016 WL 7650592, at *6;

---

[4] Vega has already been awarded the overtime for his last four weeks of employment. *See* Part III.B.1.

11

*Charvac v. M&T Project Managers of New York, Inc.*, No. 12-cv-5637 (CBA) (RER), 2015 WL 5475531, at *6 (E.D.N.Y. June 17, 2015). Rather, courts are to award liquidated damages that provide for the greater recovery. N.Y. Lab. Law § 198(1-a). The NYLL provides the greater recovery for Plaintiff because it allows Plaintiff to recover liquidated damages for all claims brought.

An employee is entitled to recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime compensation. *Id.* If the employer shows a good faith basis for believing that its underpayment of wages was in compliance with the law, the court may decide not to award liquidated damages. *Id.* Since Defendants failed to respond to this motion, no good faith exists and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-cv-1695 (ARR) (MDG), 2015 WL 1529653, at *12 (E.D.N.Y. March 31, 2015) (finding defaulting defendants did not show good faith). Vega is therefore entitled to 100% of his damages for overtime ($3,520.00) and unpaid wages ($3,840.00) violations. Accordingly, I recommend awarding Vega liquidated damages in the amount of $7,360.00.

   **C. Wage Theft Protection Act**

Vega seeks the maximum statutory penalty for Defendants' alleged failure to produce written paystubs, wage statements, and written notices of his rate of pay in violation of NYLL §§ 195(1)(a) and 195(3). (*See* Compl. ¶¶ 75–76; NYLL §§ 195(1)(a), 195(3)). Section 195(1)(a) requires that every employer provide his or her employees a notice at the time of hiring with employment information, including their rate of pay, allowances such as compensation for tips, meals, and lodging, and the regular pay date. § 195(1)(a). Section 195(3) requires that every employer also provide his or her employees a statement with every wage payment that includes

the pay period, allowances, deductions, gross and net wages, as well as regular and overtime hours and wages for those not exempt from overtime compensation. § 195(3).

If the notice required by § 195(1)(a) is not provided to an employee within ten business days, that employee may recover $50.00 for each workday the violation continues to occur up to a statutory maximum of $5,000.00. § 198(1-b). If the notice required by § 195(3) is not provided to the employee, that employee may recover $250.00 for each workday the violation continues to occur up to a statutory maximum of $5,000.00. § 198(1-d). Courts can but are not required to allow recovery for violations of multiple subdivisions under § 195. *Jiaren Wei v. Lingtou Zhengs Corp.*, No. 13-cv-5164, 2015 WL 739943, at *12 (E.D.N.Y. Feb. 20, 2015); *Jaramillo v. Banana King Rest. Corp.*, No. 12-cv-5649, 2014 WL 2993450, at *6-7 (E.D.N.Y. July 2, 2014) (holding that, in a motion for default judgment brought under the NYLL, the plaintiff was "entitled to receive the statutory maximum . . . in damages for the employer's failure to provide required notice and [ ] additional [ ] damages for the employer's failure to provide required statements for plaintiff's entire employment period of 61 weeks.")).

From April 2016 to September 2016, and from August 2017 to November 2017, Vega worked six days a week for Defendants. (Compl. ¶¶ 38, 34). Defendants paid him $160.00 per day via an $800.00 business check and $160.00 in cash for the sixth day he worked each week. (Compl. ¶¶ 40–42, 45; Dkt. No. 10 at 2; Vega Decl. ¶¶ 12–13, 15–16). Vega alleges this was "to disguise the fact that he was working overtime." (Compl. ¶ 45). Vega also claims that the business checks did not contain information on his rate of pay, and that Defendant never produced paystubs, wage statements, or written notices of his rate of pay. (Compl. ¶¶ 45, 53–54; Dkt. No. 10 at 2–3; Vega Decl. ¶¶ 14, 21). On these facts, I find the violations was willful,

13

specifically by use of cash payments and business checks instead of payroll checks. Vega is consequently entitled to receive damages under both § 195(1)(a) and § 195(3).

Altogether, the violations spanned forty-four workweeks, therefore Vega can receive the statutory maximum for each violation.[5] Vega is entitled to $5,000.00 in damages for the violation of Section 195(1) and $5,000 for the violations of Section 195(3).

### D. Attorneys' Fees and Expenses

1. <u>Fees</u>

Both the FLSA and the NYLL allow for an award of "reasonable" attorneys' fees. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). The amount of reasonable attorneys' fees is determined by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate," or "a presumptively reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 188–90 (2d Cir.2008); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir.1989).

   i. <u>Reasonable Hourly Rates</u>

Courts in this district have awarded, at the high end of the spectrum, $450 for partners, $300 for associates, and $200 for recently graduates. *See Cuevas v. Ruby Enterprises of New York, Inc.,* No. 10-cv-5257 (JS) (WDW), 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013) (internal citations omitted). Vega seeks attorneys' fees for David Stein ("Stein"), founding partner at Samuel & Stein, and David Nieporent ("Nieporent"), senior associate at Samuel & Stein. Stein has been licensed to practice law since 1990 and has been licensed to practice law in New York since 2000. (*Id.* ¶ 20). Nieporent has practiced law since 2001 and has been licensed

---

[5] Working six days a week, Vega would reach the statutory maximum at just shy of seventeen work weeks ($5,000.00 /($50.00 x 6)).

to practice in New York since 2011. (*Id.* ¶ 21). The nature of their representation and work involved in this case was relatively straightforward, especially because K & C defaulted, and their rates—$375.00 per hour for Stein and $325.00 per hour for Nieporent, (Stein Decl. ¶ 22)—are in line with other counsel in this area. Accordingly, I recommend awarding Stein and Nieporent their requested rates of $375.00 and $325.00 per hour, respectively.

ii. Reasonable Hours Expended

The second component to the attorney's fee calculation: reasonable hours, is determined by taking the hours actually expended less any "excessive, redundant, or otherwise unnecessary" time. *Hensley*, 461 U.S. at 433–34. The party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983). These time records should "specify, for each . . . [timekeeper], the date, the hours expended, and the nature of the work done." *Id.* at 1148. The court must examine the particular hours, with an eye to the value of the client's case, of the work product resulting from the specific time expenditures. *See Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir.1994); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir.1985).

Vega seeks 12.9 hours of attorneys' fees, 2.2 hours for Stein and 10.7 hours for Nieporent. (Stein Decl. Ex. F). In support of these hours Vega submits Stein and Nieporent's contemporaneous billing records that detail the work performed and the time spent on this matter. (*Id.*). Stein charged a discounted fee of $125.00 per hour for .2 of his billed hours "for tasks that did not require the expertise of a senior partner." (Stein Decl. ¶ 22). I have examined the time records and find that the hours expended are reasonable and not excessive. Accordingly, I recommend awarding Vega compensation for Stein's 2.2 hours of work and Nieporent's 10.7

hours of work. Applying the attorneys' respective reasonable rates to the reasonable hours billed in this matter, I recommend awarding Vega a total of $4,252.50 in attorneys' fees, consisting of $775.00 for Stein's fees (2 hours at $375.00 per hour and .2 hours at $125.00 per hour) and $3,477.50 for Nieporent's fees (10.7 hours at $325.00 per hour).

2. Expenses

Vega seeks to recover $496.00 in litigation expenses, consisting of $400.00 for the filing fee and $96.00 for the service fee. A prevailing plaintiff in an action under the FLSA or the NYLL is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *see also Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F.Supp.2d 260, 269 (E.D.N.Y.2008)("Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable")(citing *Tips Exports, Inc. v. Music Mahal, Inc.*, No. 01-cv-5412 (SJF)(WP), 2007 WL 952036, at *11 (E.D.N.Y. Mar. 27, 2007)).

Vega failed to provide any evidence to support his request for the court's filing fee, but a court can take judicial notice of the court's filing fee and award it. *See Joe Hand Promotions, Inc. v. Elmore*, No. 11-cv-3761 (KAM) (SMG), 2013 WL 2352855, at *7 (E.D.N.Y. May 29, 2013). Vega did provide sufficient documentary evidence in support of the $96.00 service fee in the form of a receipt from the process server. (Stein Decl. Ex. G). Accordingly, I recommend awarding Vega $496.00.

**E. State Common Law Conversion Claim**

Under New York law, "the usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest." *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 326, 402 N.E.2d 122, 125 (1980).

16

Vega alleges that his personal work tools K & C refused to return are worth $1,500.00. (Compl. ¶ 52; Dkt. No. 10 at 3; Vega Decl. ¶ 20). Vega only requests compensation for the $1,500.00 value of his tools and not interest. Accordingly, I recommend awarding Vega $1,500.00 for his tools.

### F.  Interest

Unlike pre-judgment interest, plaintiffs are entitled to post-judgment interest on all money awards as a matter of right. *See Holness v. Nat'l Mobile Television, Inc.*, No. 09-cv-2601 (KAM) (RML), 2012 WL 1744847, at *7 (E.D.N.Y. Feb. 14, 2012), *adopted by*, 2012 WL 1744744 (E.D.N.Y. May 15, 2012); *see also* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). An award of post-judgment interest is governed by the federal rate as set forth in 28 U.S.C. § 1961. *See Cappiello v. ICD Publ'ns*, 868 F.Supp.2d 55, 63–64 (E.D.N.Y. 2012). Accordingly, I recommend awarding Vega post-judgment interest on all sums awarded, including attorneys' fees and expenses, commencing from when the Clerk of the Court enters judgment until the date of payment. *See Gamble v. E. Bronx N.A.A.C.P. Day Care Ctr., Inc.*, No. 04-cv-1198 (KMW) (HBP), 2008 WL 2115237, at *2 (S.D.N.Y. May 15, 2008).

## CONCLUSION

For the foregoing reasons, I respectfully recommend granting Vega's motion for default judgment against K & C. I further recommend entering a total judgment for Vega against K & C in the amount of $30,968.50, plus post-judgment interest, as follows: $7,360.00 for his unpaid regular and overtime wages, $7,360.00 for liquidated damages, $10,000.00 for statutory damages, $4,748.50 for his attorneys' fees and expenses, $1,500.00 for his personal work tools.

Any objection to this Report must be filed in writing with the Clerk of the Court within fourteen days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file any such objection waives the right to appeal the Court's Order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 28, 2018
Brooklyn, NY